Curia, per

Richardson, J.
This case, lihe, that of James Adger against the same defendants, consists in another complaint of assumed taxation, oyer the non-residents of the city. of Charleston, by the city authorities. It comes also from the north side of Boundary street, on Charleston Neck, and is interesting to an entire profession, personally located there, but carrying on their art and trade in the city market, not on the highways or in private houses, (fee. Both of those cases were decided at the Circuit Court, merely to give them passports to the Court of Appeals, and on a single principle of the taxing power, that was supposed to embrace and support, at least, one point of Adger’s case, and to exclude the complaint of the present relátor.
These cases have been now reconsidered, with the attention due to every consequential decision, and to the feelings of communities situated like Charleston and the Neck, which are so likely, even under the best dispositions, to be led into collision. The court has to hold the scales even between them, and to let the one or the other decline, only by the weight of strict law; and not the less impartially, because this is the case of expectation to the fraternity of colored butchers on Charleston Neck, but carrying on their active occupation in fhe public market of the city, as the other case was to the men of business on the Neck. The tax Ordinance from which the relator claims exemption, by reason of his residence out of the city, is as follows. “That free negroes and free persons of color, shall be and are hereby made liable to the following taxes, viz: — Males, from the age of twenty-one to the age of *626 sixty, carrying on any trade or art, or being a mechanic, and residing within the city, or residing without the city, exercising his trade or art therein, each a tax of ten dollars.” The relator is a butcher, in the public market of Charleston. The market belongs to the city, and is regulated by an Ordinance of 1808. Its police is strict, and order is preserved with great vigilance by the commissioners of the market.
In dense populations, dependant for daily food upon the public market, not merely general convenience, but- the public health and. necessity, require such regulation and caution. It is not only in Europe, as the written argument of the relator’s counsel supposes, but every where, I apprehend, in such communities, from the days of the great Hebrew Legislator to the present time, that strict regulations have been deemed of essential importance, and duly enforced in the beef and flesh markets of large cities. And in this way, the butchering of cattle and the vending of meats becomes a regulated municipal calling for the common convenience and safety. It is under similar regulations in the Charleston markets, that the relator has elected to take his position as a butcher, and pays the monthly stallage of four dollars rent to the commissioners of the market. This monthly rent is what the relator’s counsel supposed the only exaction the city authorities could require of a non-resident butcher. Can, then, his residence on the Neck exempt him from the general undiscriminating tax upon all city butchers of his colour and class ? As a resident on the Neck, he could not be taxed, but by holding taxable property within the city, or on the income and profits of a profession, trade, or occupation, “carried on within the city.” The relator has assuredly carried on, at least, an occupation in the city. The term occupation, is very comprehensive, and may well include the calling of a butcher, (see Johnson or Webster’s Dictionary) but the legal doctrine upon which this case turns, has been expounded and applied to the case of Thomas, the slave of Adger, who worked out under a city badge. Thomas’s home was also at his master’s residence on the Neck, but his owner had to pay the general city tax assessed on his class, who are the actual inhabitants of the *627 city, because he had taken a city badge; and I can perceive no essential distinction between his case and that of this relator, who is his own master, and has placed himself, voluntarily, under the police of the city for his own gain. This is precisely what Mr. Adger did with his slave Thomas. In addition, then, to the exposition in that case, suppose a city .officer were to chose to lodge over boundary street, that could not change the duties or liabilities of his accepted office and voluntary position under the city government. It would be an evident evasion of the just meaning of the law; the sense of which is the very laxo, and the attempt could not succeed; it would be an imposition upon the city institutions. In all such cases then, as Thomas’s, the relator’s and the officer’s, the parties assuming a definite municipal calling or duty, have placed themselves, as if in the city. Thomas became as a city negro, with a license. The officer still remained-a municipal officer; and so the relator stood as a municipal relator within the city; and, of course, each might be taxed in his voluntary vocation, as if an actual inhabitant. For such purpose, each may be well considered as a voluntary absentee from his station in the city, or as having renounced the exemption from the taxes attached to his residence out of the city. Much might be also urged, to shew that the relator was liable to be taxed for his profession, trade or occupation carried on in the city under the Act of 1836. But as the particular tax does not appear to have been assessed upon his income from it, but is laid upon all butchers of color, equally; and as that view of the defence is not indispensible, the court decides upon the ground already discussed in Adger’s case, as applying equally to this case. But which, let it be observed, illustrates, and is illustrated by, the proper and just moral aim of the.Act of 1836, which is this, you. are not, in your permanent occupation in the pursuit of pecuniary gain, to. claim all the advantages of a well regulated municipality, but by lodging at night beyond Boundary street, to excuse yourself from any returns for its many advantages. Whether, therefore, the argument be under the Act of 1836, or upon the general ground upon which the court decides the case, the same sense of reciprocal justice is required of the relator. His rent or stallage does not constitute, necessarily, any return for *628 such advantages to his definite and well regulated municipal occupation as butcher in the city market. Such stallage was necessary to connect his trade with the market, as Thomas’s badge to his plying for work in the city. As to the character of the particular tax, which was much discussed, it is a capitation tax, like that on Thomas, and applies to all the colored butchers that carry on their occupation in the city market, under its police regulations, although they may personally reside on the Neck. There they slaughter bullocks, transport the beef to the market, and then assume their positions under its laws and privileges, and having done so, they catinot elude their liabilities by lodging beyond boundary street. The decision, therefore, of the Circuit is affirmed, and in this case, unanimously;
O’Neall, Evans, Butler, Wardlaw, and Frost, JJ, concurred.